IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| IN RE: | **)** | CHAPTER 13 |
| | **)** | |
| ARDER M. CHONG, | **)** | CASE NO. 15-40789-EJC |
| *AKA ARDER M. REIP* | **)** | |
| | **)** | |
| Debtor. | **)** | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | **)** | - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - |
| | **)** | |
| PNC BANK, NATIONAL | **)** | JUDGE: EDWARD  J. COLEMAN |
| ASSOCIATION, | **)** | |
| | **)** | |
| Movant. | **)** | |
| | **)** | |
| vs. | **)** | |
| | **)** | |
| ARDER M. CHONG, | **)** | |
| *AKA ARDER M. REIP* | **)** | |
| O BYRON MEREDITH, III, Trustee | **)** | |
| | **)** | |
| Respondents. | **)** | |

MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Movant and shows this Court the following:

1.

This is a Motion under Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property.

2.

Movant is the servicer of a loan secured by certain real property in which Debtor claims an interest.  A copy of the Deed of Trust is attached hereto and made a part hereof.  Said real

property is security for a promissory note, and is commonly known as 4901 Michigan Avenue, Saint Louis, Missouri 63111 (the "Property").

3.

Debtor's Chapter 13 Plan provides for the surrender of the Real Property.  In addition, Debtor is in default of the monthly installments pursuant to the Note.  Through the month of May, 2017, Debtor is delinquent for three (3) contractual payments.

4.

The unpaid principal balance is $64,445.35, and interest is due thereon in accordance with the Note.

5.

Because of Debtor's default and clear inability to make all required payments, Movant is not adequately protected and shows that there is cause for relief from the automatic stay.

6.

Because the Deed of Trust so provides, Movant is entitled to its attorney's fees.

7.

Movant requests it be permitted to contact the Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements.

WHEREFORE, Movant prays (1) for an Order lifting the automatic stay, authorizing Movant, its successors and assigns, to proceed with the exercise of its private power of sale and to foreclose under its Deed of Trust and appropriate state statutes; (2) for an award of reasonable attorney's fees;  (3) that Movant, at its option, be permitted to contact the Debtor via telephone

or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements; (4) for waiver of Bankruptcy Rule 4001 (a)(3); and (5) for such other and further relief as is just and equitable.

*/s/John D. Schlotter*
John D. Schlotter Georgia BAR NO. 629456
Attorney for Movant
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
Direct Dial & Fax: 678-281-6453
John.Schlotter@mccalla.com

File No.: PNC-14-01882-2

# NOTE

**Missouri**

FHA Case No.

**November 16, 2007**

[Date]

**4901 MICHIGAN AVE, SAINT LOUIS, Missouri 63111**

[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **National City Mortgage a division of National City Bank**

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **SEVENTY THREE THOUSAND NINE HUNDRED NINETY THREE & 00/100**

Dollars (U.S. $ **73,993.00** ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **SIX AND SEVEN-EIGHTHS** percent ( **6.875** %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **January 1, 2008** . Any principal and interest remaining on the first day of **December, 2037** , will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at **National City Mortgage Co., P O Box 54828, Los Angeles, CA 90054-0828** or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ **486.09** . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

**FHA Missouri Fixed Rate Note - 10/95**

VMP-1R(MO) (0404)

VMP Mortgage Solutions, Inc. (800)521-7291

Page 1 of 3                    Initials: _____

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments.

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **Four** percent ( **4.00** %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.



Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it. [MO Rev Stat 432.045(3)(1).]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Arder M. Chong_ _____ (Seal)     _____ (Seal)
ARDER M CHONG                   -Borrower                                              -Borrower

PAY TO THE ORDER OF
NATIONAL CITY MORTGAGE CO
A SUBSIDIARY OF NATIONAL CITY BANK
WITHOUT RECOURSE
NATIONAL CITY MORTGAGE, A DIVISION OF
NATIONAL CITY BANK                                                        _____ (Seal)
                                                                                                -Borrower
INDIA M COOPER
LOAN REVIEW ADMINISTRATOR            (Seal)
                                                          -Borrower     _____ (Seal)
                                                                                                -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE  PNC Bank, National Association  3/p/ve       (Seal)
NATIONAL CITY MORTGAGE CO                         -Borrower     _____ (Seal)
A SUBSIDIARY OF NATIONAL CITY BANK                                                   -Borrower
Division

INDIA M COOPER
LOAN REVIEW ADMINISTRATOR                          [Sign Original Only]



BOOK          PAGE
11262007-0326

RECORDER OF DEEDS
CITY OF ST. LOUIS
RECORDED-CERTIFIED ON
11/26/2007     04:29PM

SHARON QUIGLEY CARPENTER
RECORDER OF DEEDS

PAGES:  11
AMOUNT DUE:  $73.00

Clerk:

————————————————————[Space Above this Line for Recording Data]——

Title(s) of Document:  *Deed of Trust*

Date of Document:  *Nov. 16, 2007*

Grantor(s):  **ARDER M CHONG**

Grantor's Address:  **4901 MICHIGAN AVE**
**SAINT LOUIS, Missouri 63111**

Grantee(s):  **National City Mortgage a division of**
**National City Bank**

Grantee's Address:  **3232 NEWMARK DRIVE,**
**MIAMISBURG, OH   45342**

Full Legal Description is located on page:  *11*

Reference Book(s) and Page(s), if required:

**MO Indexing Coversheet - 11/01**
-368C(MO) (0111)
VMP MORTGAGE FORMS - (800)521-7291



MOCOVER



Return To:

National City Bank
P.O. Box 8800
Dayton, OH 45401-8800

Full Legal Description located on page ||

——————————— [Space Above This Line For Recording Data] ———————————

**State of Missouri**

FHA Case No.

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on **November 16, 2007**
The Grantor is
ARDER M CHONG   *Single*

("Borrower")

whose address is   4901 MICHIGAN AVE SAINT LOUIS, Missouri 63111

The trustee is          **MILLSAP AND SINGER, P.C.**
                        **777 BONHOMME AVE, STE 2300**
                        **ST. LOUIS, MO 63105**
("Trustee"). The beneficiary is **National City Mortgage a division of**
**National City Bank**                                                        ,
which is organized and existing under the laws of   **United States**                    , and
whose address is  **3232 NEWMARK DRIVE, MIAMISBURG, OH  45342**
                                            ("Lender"). Borrower owes Lender the principal sum of
**SEVENTY THREE THOUSAND NINE HUNDRED NINETY THREE & 00/100**
                                            Dollars (U.S. $      **73,993.00**    ).

**FHA Missouri Deed of Trust - 4/96**
**VMP®-4R(MO)** (0305).01

VMP Mortgage Solutions (800)521-7291
Page 1 of 9                    Initials: _al_



This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **December 1, 2037** . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in **ST LOUIS (CITY)** County, Missouri:

**LEGAL IS ATTACHED**

Parcel ID Number:
which has the address of    **4901 MICHIGAN AVE**                                                                [Street]
    **SAINT LOUIS**                                    [City] Missouri    **63111**        [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

VMP-4R(MO) (0305).01                            · Page 2 of 9                                    Initials:

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall



also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.



**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.



**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Lease of the Property.** Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider ☐ Growing Equity Rider ☐ Other [specify]
☐ Planned Unit Development Rider ☐ Graduated Payment Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          *Arder M. Chong* _____ (Seal)
                                           ARDER M CHONG                     -Borrower


_____          _____ (Seal)
                                                                             -Borrower


_____ (Seal)           _____ (Seal)
                         -Borrower                                           -Borrower


_____ (Seal)           _____ (Seal)
                         -Borrower                                           -Borrower


_____ (Seal)           _____ (Seal)
                         -Borrower                                           -Borrower

STATE OF ~~MISSOURI~~, *Georgia* /M        *Liberty*  County ss:

On this  *16*  day of  *November*                    , *2007* , before me personally appeared  *Arder M. Chong*

to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the and State aforesaid, the day and year first above written.

My Term Expires: *6/20/11*

_____
Notary Public



# Exhibit "A"
## Legal Description

All that certain parcel of land situated in the City of St. Louis, State of Missouri, being known and designated as part of Lot 95 in Block 2799, described as follows:

Beginning at the intersection of the Southern line of Delor Street (60 feet wide) with the Western line of Michigan Avenue (60 feet wide) thence Westwardly along said Southern line of Delor Street for a distance of 128.42 feet to a point; thence deflecting to the left through an angle of 90° 07' and continuing for a distance of 48.52 feet to a point; thence deflecting to the left through an angle of 99° 20' and continuing for a distance of 60.61 feet to a point in the West wall of building known and numbered as 4903 Michigan Avenue; thence deflecting to the left through an angle of 90° a distance of 0.75 of a foot to the Northwest corner of said building known and numbered as 4903 Michigan Avenue; thence Eastwardly along the North line of said building known and numbered as 4903 Michigan Avenue, 42.22 feet to a point being the Northeast corner of said building known and numbered as 4903 Michigan Avenue; thence deflecting to the right through an angle of 90° a distance of 0.81 of a foot to a point in the East wall of said building known and numbered as 4903 Michigan Avenue; thence Eastwardly 19.16 feet to a point in said Western line of Michigan Avenue; thence Northwardly along said Western line of Michigan Avenue for a distance of 29.60 feet to the point of beginning; excepting the portion of the above described tract that lies outside of the rounding of radius 25.0 feet, between said Southern line of Delor Street and said Western line of Michigan Avenue, according to Survey Plat executed by R.M. Harrison and Associates consulting Engineers during the Month of May 1965.

Tax ID: ████████████



END OF DOCUMENT
PAGES 1 THROUGH 116

LOAN NUMBER:

## ASSIGNMENT OF DEED OF TRUST AND PROMISSORY NOTE

FOR VALUE RECEIVED, __National City Mortgage, a division of__
__National City Bank_____, a National Banking Association,
3232 Newmark Drive, Miamisburg, Ohio 45342, hereby sells, transfers, sets over, and assigns to:

**National City Mortgage Co. a subsidiary of National City Bank**


**National City Mortgage, a division of National City Bank**_____
entire right, title, and interest in and to the following described Deed of Trust (the Deed of Trust) and promissory
note (the Promissory Note) which are dated __November 16, 2007__, and are in the original principal
amount of $_____73,993.00_____. The Deed of Trust is described and identified by the following
name(s) of the mortgagor(s), the date of recording, instrument number, and/or book number as recorded in
____ST LOUIS (CITY)_____ County, _____Missouri_____:

|  | INSTRUMENT |  |
| MORTGAGOR(S) | NUMBER | BOOK & PAGE |
| **ARDER M CHONG** |  |  |


IN TESTIMONY WHEREOF, said **National City Mortgage, a division of**_____
__National City Bank_____ has hereunto set its hands this ____5____ day of
____December____, __2007__.

WITNESS:

National City Mortgage,
a division of
National City Bank
By: _____
Name: **TERRY BENNETT-BADER**
Title: **LOAN REVIEW ADMINISTRATOR**

STATE OF _____**OHIO**_____ )
                                        ) SS:
COUNTY OF __**WARREN**_____ )


On this ____5____ day of _____**December**_____, ____**2007**____, before me, the undersigned, a
Notary Public in and for said County and State, personally appeared _____**TERRY BENNETT-BADER**_____, the
**LOAN REVIEW ADMINISTRATOR** for and on behalf of **National City Mortgage,**_____
**a division of National City Bank**_____, and duly authorized to do so acknowledged the
execution of the foregoing Assignment of Deed of Trust and Promissory Note as its voluntary act and deed for the
uses and purposes therein contained.

**KRISTINE N BROWN**
Notary Public

My Commission Expires:          03/17/12        My County of Residence:      **WARREN**

This Instrument Prepared by:   **National City Bank**
                Return to:   **National City Bank**
                             **P.O. Box 8800**
                             **Dayton, OH 45401-8800**

ASSINWD (06/06)

# ⊛PNCBANK

## CERTIFICATE

The undersigned, George P. Long, III, Secretary of National City Bank, does hereby certify as follows:

1. Effective January 1, 2005, National City Mortgage Co. ("Old NCMC"), was an Ohio corporation and wholly owned subsidiary of National City Bank of Indiana ("NCBIN").

2. Effective January 1, 2005, Old NCMC first contributed the servicing business to NCMC NewCo, Inc. ("New NCMC), a wholly owned subsidiary of Old NCMC.

3. Effective January 1, 2005, Old NCMC made a dividend of the origination business to NCBIN.  After the contribution and dividend, Old NCMC held cash and the ADA interests.

4. Effective January 4, 2005, New NCMC changed its name from "NCMC NewCo, Inc." to "National City Mortgage Co."

5. Effective January 4, 2005, Old NCMC changed its name from "National City Mortgage Co." to "National City Mortgage, Inc."

6. Effective July 22, 2006, National City Bank of Indiana was acquired by National City Bank and National City Mortgage Co. became a wholly owned subsidiary of National City Bank.

7. Effective October 1, 2008, National City Mortgage Company merged into National City Bank and became a division of National City Bank.

8. National City Bank was a wholly owned subsidiary of National City Corporation.

9. Effective December 31, 2008, National City Corporation merged with and into The PNC Financial Services Group, Inc. and National City Bank became a wholly owned subsidiary of The PNC Financial Services Group, Inc.

10. Effective as of November 6, 2009, National City Bank and pursuant to approval granted by the United States Office of the Comptroller of the Currency (as evidenced by the official certification dated November 6, 2009 attached hereto as Exhibit "A"), was merged with and into PNC Bank, National Association.

11. PNC Bank, National Association is a duly organized and existing national banking association (Charter Number 1316) and wholly owned subsidiary of PNC Bancorp, Inc. (a wholly owned subsidiary of The PNC Financial Services Group, Inc.),

Member of The PNC Financial Services Group

One PNC Plaza  249 Fifth Avenue  Pittsburgh  Pennsylvania  15222 2707

having its main office located at 222 Delaware Avenue, Wilmington, Delaware 19801 and using federal Employer Identification Number 22-1146430.

IN WITNESS WHEREOF, the undersigned has hereunto set his hand and affixed the seal of this Bank this 22nd day of January, 2010.



_____

George P. Long, III

**EXHIBIT A**



Comptroller of the Currency
Administrator of National Banks

| | |
|---|---|
| Northeastern District Office | Licensing Division |
| 340 Madison Avenue, 5th Floor | Telephone: (212)790-4055 |
| New York, New York 10173-0002 | Fax: (301) 333-7015 |

November 6, 2009

James S. Keller
Chief Regulatory Counsel
The PNC Financial Services Group, Inc.
249 Fifth Avenue
One PNC Plaza, 21st Floor
Pittsburgh, Pennsylvania 15222-2707

Re:   Application to merge National City Bank, Cleveland, Ohio, with and into PNC Bank,
National Association, Wilmington, Delaware under the charter and title of the latter.
Control No:  2009 NE 02 0017                    Charter No: 1316

Dear Mr. Keller:

This letter is the official certification of the Comptroller of the Currency to merge National City
Bank, Cleveland, Ohio ("NCB"), with and into PNC Bank, National Association, Wilmington,
Delaware ("PNC Bank"), effective as of close of business on November 6, 2009.  The resulting
bank's title is PNC Bank, National Association, charter number 1316.

This is also the official authorization given to PNC Bank, the resulting bank, to operate branches
of NCB as branches of the resulting bank. Branches of a national bank target are automatically
carried over to the resulting bank and retain their current OCC branch numbers.

We understand that upon consummation, the capital surplus of PNC Bank will increase.  Within
30 days following consummation, please provide this office with the exact dollar amount of the
capital change so that we may issue our letter certifying the capital increase.

If the combination does not occur as represented in your letter of October 26, 2009, this
certification must be returned to the OCC.  Following consummation of the merger, please return
the charter certificate for NCB so that we may properly close our files for this bank.

Sincerely,

Sandya Reddy
Acting Director for District Licensing

 PNC

## CERTIFICATE

The undersigned, Janet L. Deringer, Assistant Corporate Secretary of The PNC Financial Services Group, Inc. does hereby certify as follows:

1. Effective December 31, 2008, National City Corporation merged with and into The PNC Financial Services Group, Inc.

2. Attached hereto as Exhibit A is the Certificate of Merger filed with the State of Delaware and Exhibit B is the Certificate of Merger filed with the Commonwealth of Pennsylvania.

IN WITNESS WHEREOF, the undersigned has hereunto set her hand and affixed the seal of this Corporation this 10th day of September, 2009.



Janet L. Deringer

The PNC Financial Services Group

One PNC Plaza  249 Fifth Avenue  Pittsburgh  Pennsylvania  15222 2707

www.pnc.com

M:\LGL\BOARD\CERT\NATIONAL CITY\NATIONAL CITY CORPORATION.doc

**EXHIBIT A**

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 10:58 AM 12/30/2008*
*FILED 10:58 AM 12/30/2008*
*SRV 081237173 – 0784371 FILE*

## CERTIFICATE OF MERGER

### OF

### NATIONAL CITY CORPORATION

### WITH AND INTO

### THE PNC FINANCIAL SERVICES GROUP, INC.

Pursuant to Section 252 of the
Delaware General Corporation Law

The undersigned corporation does hereby certify:

FIRST:  That the name and state of incorporation of each of the constituent corporations in the merger is as follows:

| Name | State of Incorporation |
|------|------------------------|
| National City Corporation | Delaware |
| The PNC Financial Services Group, Inc. | Pennsylvania |

SECOND: That an agreement and plan of merger (the "Merger Agreement") among the constituent corporations in the merger (the "Merger") has been approved, adopted, certified, executed and acknowledged by each of the constituent corporations in accordance with the requirements of Section 252 of the Delaware General Corporation Law and as required by Pennsylvania law.

THIRD:  That The PNC Financial Services Group, Inc. will be the surviving corporation in the Merger, and that the name of the surviving corporation will be "The PNC Financial Services Group, Inc."

FOURTH:  That the articles of incorporation of The PNC Financial Services Group, Inc. will be the articles of incorporation of the surviving corporation.

FIFTH:  That the executed Merger Agreement is on file at an office of the surviving corporation, the address of which is: One PNC Plaza, 249 Fifth Avenue, Pittsburgh, Pennsylvania 15222-2707.

SIXTH:  That a copy of the Merger Agreement will be furnished by the surviving corporation, on request and without cost, to any stockholder of any constituent corporation.

SEVENTH:  The PNC Financial Services Group, Inc. hereby agrees that it may be served with process in the State of Delaware in any proceeding for enforcement of any obligation of National City Corporation, as well as for enforcement of any obligation of The PNC Financial

WM319955v5

Services Group, Inc. arising from the Merger, including any suit or proceeding to enforce the right of any stockholders as determined in appraisal proceedings pursuant to Section 262 of the Delaware General Corporation Law (as applicable), and irrevocably appoints the Delaware Secretary of State as its agent to accept service of process in any such suit or proceeding, which process shall be mailed to The PNC Financial Services Group, Inc. at the following address: One PNC Plaza, 249 Fifth Avenue, Pittsburgh, Pennsylvania 15222-2707, Attention: Legal Department.

EIGHTH:  That the effective date and time of this Certificate of Merger and the merger effected hereby shall be 11:00 a.m., Eastern Standard Time, on December 31, 2008.

*[Signature Page Follows]*

2

In witness whereof, The PNC Financial Services Group, Inc. has caused this certificate of Merger to be executed by its duly authorized officer this 30th day of December, 2008.

THE PNC FINANCIAL SERVICES GROUP, INC.

By: _____

Name: George P. Long III

Title: Corporate Secretary

*[Signature Page – Certificate of Merger (Delaware)]*

**EXHIBIT B**

Entity #: 754401
Date Filed: 12/30/2008
Effective Date: 12/31/2008
Pedro A. Cortés
Secretary of the Commonwealth

## PENNSYLVANIA DEPARTMENT OF STATE
## CORPORATION BUREAU

Articles/Certificate of Merger
(15 Pa.C.S.)

Entity Number 754401

X    Domestic Business Corporation (§ 1926)
____ Domestic Nonprofit Corporation (§ 5926)
____ Limited Partnership (§ 8547)

Name  BELINDA SCHORY
Address  PENNCORP SERVICE GROUP, INC.
City  600 NORTH SECOND ST.
PO BOX 1210              Zip Code
HARRISBURG, PA 17108-1210

Document will be returned
to the name and address
you enter to the left.

Fee: $150 plus $40 additional for each
Party in addition to two

Filed in the Department of State on _____

_____
Secretary of the Commonwealth

In compliance with the requirements of the applicable provisions (relating to articles of merger or consolidation), the undersigned desiring to effect a merger, hereby state that:

1.  The name of the corporation/limited partnership surviving the merger is:
The PNC Financial Services Group, Inc.

2.  *Check and complete the following:*
X    The surviving corporation/limited partnership is a domestic business/nonprofit corporation/limited partnership and the (a) address of its current registered office in this Commonwealth or (b) name of its commercial registered office provider and the county of venue is (the Department is hereby authorized to correct the following information to conform to the records of the Department):

| (a) Number and Street | City | State | Zip | County |
|---|---|---|---|---|
| One PNC Plaza, 249 Fifth Avenue | Pittsburgh | PA | 15222 | Allegheny |

(b) Name of Commercial Registered Office Provider                         County

c/o _____

____ The surviving corporation/limited partnership is a qualified foreign business/nonprofit corporation/limited partnership incorporated/formed under the laws of _____ and the (a) address of its current registered office in this Commonwealth or (b) name of its commercial registered office provider and the county of venue is (the Department is hereby authorized to correct the following information to conform to the records of the Department):

| (a) Number and Street | City | State | Zip | County |
|---|---|---|---|---|

Commonwealth of Pennsylvania
ARTICLES OF MERGER-BUSINESS 6 Page(s)



54v5

19535011101

| (b) Name of Commercial Registered Office Provider | | County |
|---|---|---|
| c/o | | |

___ The surviving corporation/limited partnership is a nonqualified foreign business/nonprofit corporation/limited partnership incorporated/formed under the laws of _____ and the address of its principal office under the laws of such domiciliary jurisdiction is:

| Number and Street | City | State | Zip |
|---|---|---|---|

---

**3.** The name and the address of the registered office in this Commonwealth or name of its commercial registered office provider and the county of venue of each other domestic business/nonprofit corporation/limited partnership and qualified foreign business/nonprofit corporation/limited premiership which is a party to the plan of merger are as follows:

| Name | Registered Office Address | Commercial Registered Office Provider | County |
|---|---|---|---|

National City Corporation is incorporated in Delaware, and is not a qualified foreign business corporation in Pennsylvania.

---

4. *Check and, if appropriate complete, one of the following:*

___ The plan of merger shall be effective upon filing these Articles/Certificate of Merger in the Department of State.

x_ The plan of merger shall be effective on: December 31, 2008 at 11:00 a.m., Eastern Standard Time.

  Date        Hour

---

5. The manner in which the plan of merger was adopted by each domestic corporation/limited partnership is as follows:

| Name | Manner of Adoption |
|---|---|
| The PNC Financial Services Group, Inc. | Adopted by action of the board of directors of the corporation pursuant to 15 PA.C.S. § 1924(b)(2) |

1

6. *Strike out this paragraph if no foreign corporation/limited partnership is a party to the merger.*
The plan was authorized, adopted or approved, as the case may be, by the foreign business/nonprofit corporation/limited partnership (or each of the foreign business/nonprofit corporations/limited partnerships) party to the plan in accordance with the laws of the jurisdiction in which it is incorporated/organized.

7. *Check and, if appropriate complete, one of the following:*

____ The plan of merger is set forth in full in Exhibit A attached hereto and made a part hereof.

X. Pursuant to 15 Pa.C.S. § 1901(§ 8547(b) (relating to omission of certain provisions from filed plans) the provisions, if any, of the plan of merger that amend or constitute the operative provisions of the Articles of Incorporation/Certificate of Limited Partnership of the surviving corporation/limited partnership as in effect subsequent to the effective date of the plan are set forth in full in Exhibit A attached hereto and made a party hereof. The full text of the plan of merger is on file at the principal place of business of the surviving corporation/limited partnership, the address of which is:

| One PNC Plaza, 249 Fifth Avenue | Pittsburgh | PA | 15222 | Allegheny |
|---|---|---|---|---|
| Number and street | City | State | Zip | County |

IN TESTIMONY WHEREOF, the undersigned corporation/limited partnership has caused these Articles/Certificate of Merger to be signed by a duly authorized officer thereof this

__30th__ day of _December_,

2008

The PNC Financial Services Group, Inc.
Name of Corporation/Limited Partnership

_____
Signature

Corporate Secretary
Title

National City Corporation
Name of Corporation/Limited Partnership

_____
Signature

_____
Title

6. *Strike out this paragraph if no foreign corporation/limited partnership is a party to the merger.*
The plan was authorized, adopted or approved, as the case may be, by the foreign business/nonprofit corporation/limited partnership (or each of the foreign business/nonprofit corporations/limited partnerships) party to the plan in accordance with the laws of the jurisdiction in which it is incorporated/organized.

7. *Check one, if appropriate complete one of the following:*

The plan of merger is set forth in full in Exhibit A attached hereto and made a part hereof.

X. Pursuant to 15 Pa.C.S. § 1901/§ 8547(b) (relating to omission of certain provisions from filed plans) the provisions, if any, of the plan of merger that amend or constitute the operative provisions of the Articles of Incorporation/Certificate of Limited Partnership of the surviving corporation/limited partnership as in effect subsequent to the effective date of the plan are set forth in full in Exhibit A attached hereto and made a party hereof. The full text of the plan of merger is on file at the principal place of business of the surviving corporation/limited partnership, the address of which is:

| One PNC Plaza, 249 Fifth Avenue | Pittsburgh | PA | 15222 | Allegheny |
|---|---|---|---|---|
| Number and street | City | State | Zip | County |

IN TESTIMONY WHEREOF, the undersigned corporation/limited partnership has caused these Articles/Certificate of Merger to be signed by a duly authorized officer thereof this

___30th___ day of _Deceinber_____.

2008_____.

The PNC Financial Services Group, Inc.
_____
Name of Corporation/Limited Partnership

_____
Signature

_____
Title

National City Corporation
_____
Name of Corporation/Limited Partnership

_____
Signature

Chairman, President and CEO
_____
Title

## EXHIBIT A

### ARTICLES OF MERGER

**Item #7**

There are no provisions contained in the Agreement and Plan of Merger that amend or constitute the operative Articles of Incorporation of the surviving corporation as in effect subsequent to the effective date of the Agreement and Plan of Merger.